***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The carrier on the risk for defendant in this claim was The Phoenix Insurance Company.
5. Plaintiff alleges to have sustained a compensable injury to her back on October 31, 2005 when she was pulling a loaded tote to the aisle area and the wheel of the tote caught on a valve and jerked her forward.
6. An employment relationship existed between the employee and employer on October 31, 2005.
7. Plaintiff's average weekly wage is $494.55 with a corresponding compensation rate of $329.70 per week.
8. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: (A) I.C. Forms; (B) medical records; (C) discovery responses; (D) discovery responses; (E) personnel file; (F) wage records (10/17/04 — 11/6/05); and (G) wage records (1/24/06 — termination).
9. In addition to Stipulated Exhibit(s), the following Exhibits were admitted into evidence:
 a. Plaintiff's Exhibit #1: Injury report;
 b. Plaintiff's Exhibit #2: Supervisor's report of injury;
 c. Defendants' Exhibit E: Short Term disability payments;
 d. Defendants' Exhibit F: Production report; *Page 3 
 e. Defendants' Exhibit H: Email correspondence; and
 f. Defendants' Exhibit I: Termination email
10. The depositions of Dr. Neal Goldberger, Al Gorrod, and Dr. Seth Jaffe were made part of the record by the Deputy Commissioner.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff was 48 years old and had completed the eleventh grade. Plaintiff was hired by defendant-employer as an assembly cell operator on or about September 3, 2004. Her job duties included air testing door closures to make sure that there was no leakage. Each assembled closure weighed approximately 10 pounds. Plaintiff placed the inspected door closures in a tote, which were placed on skids that had two wheels and two legs without wheels. Each tote held 198 door closures and plaintiff normally loaded between two and three totes per shift. The assembly cell operators were occasionally required to work at an increased efficiency level of production.
2. Plaintiff's average weekly wage is $494.55 with a corresponding compensation rate of $329.70 per week.
3. On October 31, 2005, the line operated at 168 percent efficiency according to the production records furnished by defendant-employer. This was the fastest rate recorded on the documents furnished by defendant-employer for any one day of production. When operating at this efficiency level, plaintiff produced approximately four or five totes of door closures per shift rather than the two to three totes she produced during a normal shift. *Page 4 
4. Plaintiff alleges that on October 31, 2005, she pulled a skid into the aisle area to put in a new tote when the wheel of the skid got caught on a valve that was lying on the floor and jerked her forward, causing an injury to her back. Plaintiff's alleged incident with the skid and the valve was not witnessed by anyone.
5. Plaintiff did not tell anyone about the alleged accident before she left work on October 31, 2005. Plaintiff had suffered a work injury in the past and she was aware of her duty to report this event within 30 days.
6. On November 1, 2005, plaintiff advised her supervisor, Wallace Peale, that her back was hurting and that she needed to go to the doctor. Mr. Peale testified at the hearing that he asked plaintiff if she had hurt her back at work and plaintiff had responded that she had not. Plaintiff testified that she did not remember what Mr. Peale had said to her when she left for the hospital because she was in so much pain and was so upset. Despite plaintiff visiting defendant-employer on numerous occasions to complete leave of absence forms after November 1, 2005, there was no further discussion regarding plaintiff's back condition and the cause of it until January 10, 2006 when plaintiff notified defendants of the alleged incident and completed an accident report.
7. On November 1, 2005, plaintiff presented to the emergency room at Union Regional Medical Center where she was diagnosed with low back pain and a lumbar sprain. The emergency room notes indicate that plaintiff "denies any injury" and that the injury occurred while "lifting" and "turning" at "home." Plaintiff was taken out of work.
8. On November 2, 2005, plaintiff went to Dr. Seth Jaffe of Carolina Bone Joint for low back pain. Plaintiff did not tell Dr. Jaffe that sustained a work-related incident or event. Dr. Jaffe's November 2, 2005 report reflects that there was "no injury." On that date, plaintiff completed an intake sheet wherein she placed an "X" next to "other" rather than "on the job" *Page 5 
accident when requested to indicate the type of injury. He also advised plaintiff to remain out of work and refrain from any type of heavy lifting, bending, twisting, and turning.
9. Plaintiff visited defendant-employer on numerous occasions between November 2, 2005 and January 2006 to renew her leave of absence forms. At no time did plaintiff report her alleged work injury to Jane Baucom in Human Resources or anyone else when she came on the premises to update her leave of absence paperwork. Plaintiff was aware that she was required to report any workplace injury within 30 days of the incident yet plaintiff repeatedly completed leave of absence forms and spoke to the defendant-employer but never mentioned the alleged incident of October 31, 2005.
10. On January 10, 2006, plaintiff filled out an "Employee's Report of Injury or Illness." In this report, plaintiff described her injury as follows: "I was moving out a full skid. The wheel got caught on a valve. It jerked me forward. That is when I hurt my back." Plaintiff failed to report her alleged work incident within 30 days. Plaintiff never reported to defendants her allegations that the repetitive nature of her work caused or contributed to her back injury.
11. Plaintiff returned to Dr. Jaffe on January 16, 2006, at which time Dr. Jaffe noted the change in plaintiff's case to a workers' compensation classification. Dr. Jaffe noted that plaintiff continued to have back pain and continued to suffer from intermittent right lower extremity radicular symptoms. He gave her a prescription for Vidocin and Soma and imposed light duty modifications for the first time since her injury.
12. Plaintiff received short-term disability payments during the entire time she was out of work from November 2, 2005 through January 23, 2006, at no cost to her.
13. Following her return to work on January 16, 2006, plaintiff continued to take pain medication in the form of Percocet and Soma. Plaintiff testified that both of these medications *Page 6 
caused drowsiness. However, plaintiff reported to Dr. Jaffe that only the Soma was the medication making her drowsy, leading him to recommend she take the Soma at night rather than during the day, so it would not effect her work. Dr. Jaffe believed that it was an individual decision made by a patient as to whether they took their pain medication at night or during the day.
14. On or about March 23, 2006, plaintiff fell asleep at work while performing her light duty work. Mr. Peale watched plaintiff sleep for an hour and fifteen minutes until she woke up, but he did not attempt to wake her and did not advise her that he had seen her sleeping. Although plaintiff was no longer taking the Soma during the day, she testified she continued to take the Percocet during the day even though it made her drowsy. On Tuesday, March 28, 2006, plaintiff was terminated for sleeping on the job.
15. Plaintiff has been receiving unemployment benefits since July 1, 2006 at the rate of $278.00 per week
16. On March 31, 2006, upon Dr. Jaffe's referral, plaintiff presented to Dr. Neal Goldberger for possible lumbar epidural steroid injections.
17. Plaintiff continued to treat with Drs. Jaffe and Goldberger at Carolina Bone and Joint. Plaintiff did not advise Dr. Jaffe of her alleged work incident regarding the skid and the valve of October 31, 2005 until January 16, 2006, two and one-half months after he began treating her. Further, plaintiff never told Dr. Jaffe she related her back condition to repetitive work or to the increased productivity demands of her job. Nor did plaintiff ever advise Dr. Goldberger that she felt her back was bothering her from the repetitive nature of her work. Plaintiff's last medical treatment was on June 21, 2006.
18. Dr. Jaffe opined that from a medical standpoint, and looking at the findings on the MRI and his examination of plaintiff, he cannot tell whether or not she injured her back at home *Page 7 
or at work. His opinion regarding the cause of her symptoms is based on the history she provided and the accuracy and honesty of that history. Dr. Jaffe stated that while plaintiff certainly had some problems that were later confirmed by MRI, the exact injury that caused all of that appears to be in question.
19. Dr. Goldberger testified that from a medical standpoint, he cannot tell whether plaintiff injured herself at home or whether she did it at work. He can only base his opinion on what she told him when she came to see him. Dr. Goldberger stated that plaintiff's symptoms are entirely consistent with her having suffered a lifting or turning injury at home. He testified that plaintiff's MRI is consistent with a non-work related condition, possibly twisting and turning at home.
20. On August 9, 2006, Al Gorrod, a certified ergonomic evaluation specialist, performed an ergonomic job analysis of plaintiff's position with defendant-employer. Mr.Gorrod could not identify any ergonomic or risk factors in plaintiff's assembly cell operator's position that could lead to a back problem other than fatigue. Mr. Gorrod opined that plaintiff's assembly cell operator position could not result in an overuse problem.
21. Plaintiff alleges that her back became sore from working at an increased pace on October 31, 2005 and that on that same date, she also suffered a compensable injury to her back when the skid she was pulling got caught on a valve and jerked plaintiff. Taking into consideration that plaintiff's testimony regarding this alleged incident is in direct contradiction to the medical records from the time period near the alleged incident, plaintiff's knowledge of the workers' compensation system gained from her prior injury, and the testimony of other witnesses who could not corroborate plaintiff's testimony, the Full Commission finds plaintiff's testimony not credible. *Page 8 
22. Plaintiff did not suffer an injury or occupational disease to her back on October 31, 2005 either due to her increased work pace or due to an incident in which her skid got caught on a valve while she was pulling it.
23. Plaintiff did not provide written or actual notice to defendants of the alleged October 31, 2005 incident and she had no reasonable excuse for her failure to provide such notice. Furthermore, defendants were prejudiced by plaintiff's failure to provide timely notice in that they were unable to investigate plaintiff's claim in a prompt fashion and lost their right to direct plaintiff's medical treatment in a reasonable fashion.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. Injury by accident is construed to include any disabling physical injury to the back if it arises out of and in the course of employment and is the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6). The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of employment. Henry v. A.C. LawrenceLeather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). In the case at hand, plaintiff has failed to show through competent, credible evidence that her injury resulted from an injury by accident arising out of and in the course of her employment. *Page 9 
2. Plaintiff has failed to meet her burden to show that she contracted a compensable occupational disease in her employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
3. Because plaintiff has failed to show that she sustained a specific traumatic incident to her back in the course of and arising out of her employment on October 31, 2005, and further because plaintiff has failed to show that she contracted a compensable occupational disease, she is not entitled to any compensation under the Workers' Compensation Act. N.C. Gen. Stat. §§ 97-2(6) and 97-53.
4. Plaintiff has failed to show that she provided written notice to defendants within 30 days of the occurrence of the alleged October 31, 2005 incident or that defendants had actual knowledge of such incident, and/or that she had a reasonable excuse for not giving written notice. Defendants were prejudiced by this failure to provide notice and, therefore, plaintiff is not entitled to any compensation for the alleged October 31, 2005 incident. N.C. Gen. Stat. § 97-22.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each party shall bear its own costs.
This the 13th day of February, 2008.
S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 10 
CONCURRING:
 S/______________________ BUCK LATTIMORE COMMISSIONER
DISSENTING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 11